CHARLES R. ELDER, executor, *vs.* DURWARD ADAMS & others.

Suffolk.    December 2, 1901. — January 3, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Guardian. Compromise,* Under Pub. Sts. c. 142, §§ 13–16.

A statutory guardian of a minor appointed under Pub. Sts. c. 139, has no right to represent his ward in a suit in which another person has been appointed guardian *ad litem* to represent the ward.

A compromise in writing of a controversy by the persons claiming interests in the estate of a testator under Pub. Sts. c. 142, §§ 13–16, St. 1889, c. 266, after having been signed by all the parties, was changed by one of the legatees relinquishing to another a certain portion of the amount agreed to be given to the first. The agreement otherwise remained unchanged. The modification of the agreement was signed by the executor, by the relinquishing legatee and by the legatee who accepted the portion relinquished. A legatee and heir at law, who did not sign again after the modification, objected to the approval of the compromise and excepted to the ruling of a single justice, that the agreement of compromise was sufficient without their signing it again. Afterwards they waived their exceptions. A statutory guardian of a minor represented by a guardian *ad litem* also excepted on the same ground. *Held,* that the statutory guardian had no standing in the case and that the exceptions were not before the court, but, had they been, the waiver of the exceptions, by the parties to the agreement who did not sign it after the last modification, was not equivalent to their signing it, and it was *intimated,* that the court would have decided, that under the statute the compromise could not be approved until it had been signed by all the parties in its final shape, and that it was immaterial that the change did not affect the amounts to be received by the persons who did not sign a second time.

PETITION under Pub. Sts. c. 142, §§ 13–16, St. 1889, c. 266, by the executor named in an instrument purporting to be the will of Julius Adams, for leave to compromise a controversy as to the validity of the will, between the persons claiming as devisees and legatees and the persons claiming under the statute regulating the descent and distribution of intestate estates, filed July 24, 1900.

Julius Adams, a resident of Boston, died on December 18, 1899, leaving an instrument which purported to be his will, by which he bequeathed $25,000 to the Carney Hospital, $5,000 to Isaac Adams, a half brother, and certain small legacies to friends and servants, and all the remainder of his estate to the Carney Hospital, in trust, to pay from the income of the estate the following annuities during the respective lives of the annuitants: to each of the children of Durward Adams, and to the child of Alice, a deceased daughter, $500 a year; to Julius Adams Ulman $1,000 yearly; to each of the other children of Elizabeth A. Ulman $500 a year; and to Mary Scurry and her sister, Kate Scurry, each $100 yearly. The concluding paragraph of the will was as follows:

" The remainder of the income of said estate, I direct to be added to the principal of the estate during the lives of said annuitants, and on the death of all, I direct the Carney Hospital to take to its own use one quarter of all the estate and to convey the residue to the youngest Adams of the issue of Durward Adams, whose descent is wholly in the male line from said Durward; in default, I direct the trustee to convey said residue to the youngest of the issue of Julius Adams Ulman; in default I direct said trustee to convey said residue to the youngest of the issue of Durward Adams; in default, I direct said trustee to convey said residue to the youngest of the issue of Elizabeth A. Ulman; in default, I direct the Carney Hospital to take to its own use the said residue."

An appeal from a decree of the Probate Court for the county of Suffolk allowing the will was taken by all the next of kin of the testator. While the appeal was pending, the petition for leave to compromise was filed, and an agreement of compromise, signed by all parties in interest, was submitted to a single justice of this court for confirmation. The agreement of compromise was subsequently modified and the modification signed by all the parties. With this first modification the agreement provided, that the Carney Hospital should receive $81,250 and that $10,500 should be deposited for accumulation for the benefit of the unascertained person entitled to the future contingent interest under the last paragraph of the will. The agreement in this form was presented for approval to *Loring*, J., who refused

to approve it as just and reasonable. Thereafter the Carney Hospital agreed to contribute from its share under the agreement of compromise $25,000 to be added to the share of the unascertained person making the share of the hospital $56,250 and the share of the unascertained person $35,500, and leaving the rest of the agreement unchanged. An amendment of the agreement to this effect was signed by the Carney Hospital, by the guardian *ad litem* for the. unascertained person and by the executor, and the agreement of compromise thus amended was presented again to *Loring*, J., for approval. Durward Adams, one of the heirs at law and next of kin, Ieulis Adams, one of the annuitants under the will, and Fannie Adams, as guardian under Pub. Sts. c. 139, of certain of her grandchildren appeared in court and objected to the approval of the compromise as amended.

The justice ruled, that, inasmuch as the interests of all the parties other than the Carney Hospital and the unascertained person who would be entitled to the future contingent interests were not affected by the supplementary agreement, that the agreement modifying the agreement of compromise could be made without the consent of the other parties to the original agreement of compromise which had been previously modified by them as before stated. At a subsequent hearing the justice found that the compromise, as finally modified was just and reasonable, but did not confirm it because of exceptions taken. Durward Adams, Ieulis Adams and Fannie Adams as guardian alleged exceptions to the foregoing ruling. At the beginning of the proceedings Godfrey Morse, Esquire, was appointed guardian *ad litem* for the minor grandchildren of Fannie Adams of whom she was the statutory guardian, and acted for them throughout the case. As guardian *ad litem* he did not except to the ruling of the justice or authorize any exception in his behalf. Before the argument of the case, Durward Adams and Ieulis Adams waived their exceptions.

*A. E. Gage*, for the Carney Hospital.

*J. F. Cronan*, (*C. H. Donahue* with him,) for Elizabeth A. Ulman, Aquila Adams and Isaac Adams.

*D. V. McIsaac*, (*S. A. Jennings* with him,) for Fannie Adams, guardian.

KNOWLTON, J. This is a petition by an executor for leave to compromise a controversy as to the validity of a will. Certain minor children, by their guardian *ad litem* appointed by this court, signed the agreement of compromise; but their statutory guardian and two other parties refused to sign it in its amended form, and objected and excepted to the decision of the court. The other two parties have waived their exceptions, and the question before us arises on a motion to dismiss the exceptions of the statutory guardian on the ground that she has no standing to object, in view of the agreement of the guardian *ad litem*.

The last clause of the Pub. Sts. c. 139, § 29, gives a statutory guardian a right to represent his ward in all legal suits and proceedings "unless another person is appointed for that purpose as guardian *ad litem* or next friend." Here is a plain implication that if a guardian *ad litem* is appointed there is no such right. Section 43 of the same chapter expressly reserves to the guardian *ad litem* power paramount to that of the statutory guardian to represent a minor in suits in court. St. 1896, c. 456, adds emphasis to the sections above cited. See *Davenport* v. *Davenport*, 5 Allen, 464; *Burke* v. *Burke*, 170 Mass. 499; *Taylor* v. *Lovering*, 171 Mass. 303. We are therefore of opinion that the guardian *ad litem* properly represents the minors in this suit, and that their statutory guardian has no standing to take or prosecute exceptions, against the will and in violation of the agreement of the guardian *ad litem*. The exceptions must, therefore, be dismissed, and the case left for further proceedings before a single justice.

But we do not intimate that a decree should be entered for the petitioner on the record as it now stands. This proceeding, in which the court upon the agreement of parties interested can modify the will of the testator, is anomalous and rests upon the statutes. Pub. Sts. c. 142, §§ 13, 14, 16. St. 1889, c. 266. The court has no jurisdiction unless the requirements of the statute are strictly complied with. The compromise must be in writing. The executor or administrator with the will annexed, those claiming as devisees or legatees whose interests will be affected by the proposed compromise, and those claiming the estate as intestate, must all be parties to it.

This case was argued on the merits as well as on the motion

to dismiss, and a part of the argument addressed to us may be stated in substance as follows : The agreement of compromise is treated by the statute as a single and entire agreement, to the whole of which the necessary persons must be parties. To the agreement, in the form in which it was finally presented to the court by amendment in this case, two of the persons necessary as parties to give it validity never agreed. They objected and excepted to the decision of the court that it was sufficient without their assent because they had agreed to a part of it presented as a complete agreement prior to the amendment, and because the direct effect of the original agreement upon the share which they would receive from the estate was the same as that of the amended agreement. They may have had reasons, into which the court could not inquire, for their willingness to consent to a settlement of the estate according to the original agreement while they were unwilling to consent to a settlement of it in a different way under the amended agreement. These reasons may or may not have been such as would commend themselves to intelligent and impartial men. So long as they are persons who must be made parties under the statute they must be parties to the whole agreement, and the will cannot be modified by the court on their assent to only a part of the agreement. Under the statute it is immaterial that the part to which they objected does not make the whole agreement less favorable to their immediate pecuniary interests than it would be if this part were omitted. The reasons for their agreement or refusal to agree are of no consequence. Their action in agreeing or refusing to agree to the compromise in its entirety properly may be affected by their belief as to the supposed wishes of the testator, or by their opinions as to what is just and reasonable in reference to the division of the property among others, or by other considerations, as well as by the direct effect of the compromise upon their pecuniary interests.

Such considerations as these naturally arise upon the facts that appear in the record. If they were presented by a party who could give us jurisdiction it would be our duty to pass upon them. They are important, for they relate to the jurisdiction of the court and the validity of the proceedings on which the future rights of the parties will depend. The waiver of exceptions by

the objectors without becoming parties to the agreement is not the same as signing the agreement to make it the foundation for a decree. All these questions and others will be open in further proceedings before a single justice.

*Exceptions dismissed.*