Anna Jaques Hospital *vs.* Attorney General & others.

Suffolk.   May 3, 1960. — June 8, 1960.

Present: Wilkins, C.J., Spalding, Counihan, Whittemore,
& Cutter, JJ.

*Trust,* Charitable trust.   *Charity.*

A will bequeathing the residue of the testator's estate to a specified public,
charitable, nonprofit hospital, which had treated the testator and his
wife well, "to be used for the purchase of medicines and surgical instru-
ments and equipment in said hospital," with no gift over if the trust
should fail, manifested a general charitable intent, so that neither the
estate of the testator nor his heirs at law or next of kin had any in-
terest in the trust fund although the hospital ceased operations some
years after receipt of the fund; and, upon the hospital's merging with
and transferring its assets to a second hospital of similar character in
the same city pursuant to a cy pres decree, the second hospital held the
trust fund subject only to the restriction of its use for the purchase of
medicines and surgical instruments and equipment therein.

Bill in equity, filed in the Supreme Judicial Court for
the county of Suffolk on October 19, 1959.

The suit was reserved and reported by *Whittemore, J.,*
without decision.

*James T. Connolly,* for the plaintiff, (*William D. Quigley,*
Assistant Attorney General, for the Attorney General, with
him).

*Robert Shaw* of New Hampshire, for the respondents
McGuirk, administrator, and others.

Whittemore, J.   This court in *Worcester Memorial
Hosp.* v. *Attorney Gen.* 337 Mass. 769, dismissed the appeal
of certain intervening trustees or members of Worcester
Memorial Hospital (Worcester) from a final decree of a
single justice which approved the "merger plan" of
Worcester and Anna Jaques Hospital (Anna Jaques) un-
der the doctrine of cy pres.   The plan provided that the
assets of Worcester be turned over to Anna Jaques.

The heirs of the donor of a trust fund affected by the de-
cree were not parties to the proceedings, and the final de-

cree after rescript therefore made an appropriate reservation[1] under which Anna Jaques has brought this substitute bill in equity seeking a decree that (a) neither the estate of Carl Edward Kakas, late of Kittery, Maine, nor any of his heirs at law or next of kin have any interest in the fund which, being the residue of Kakas's estate, was given to Worcester by Kakas's last will "to be used for the purchase of medicines and surgical instruments and equipment in said hospital," and (b) the fund, now approximately $60,000, is held by Anna Jaques upon public charitable trusts subject only to the restrictions set forth in paragraph 3 of the final decree after rescript.[2] The defendants other than the Attorney General (the defendants) are the administrator de bonis non with the will annexed of Kakas's estate, and his heirs at law.

A statement of agreed facts sets out the following: Prior to Kakas's death in 1944, Mrs. Kakas had been well treated at Worcester and Kakas while in the hospital for an operation had expressed his gratitude for friendly treatment and the family-like atmosphere and had learned of the need of the hospital for surgical instruments and equipment. Shortly thereafter Kakas had executed his last will of December 13, 1941, containing the residuary clause above set out. Worcester received the residue and used it for the purposes stated until, "in the spring of 1957, it became impractical and impossible for . . . Worcester . . . to continue its operations" and, pursuant to the court approved merger plan, its assets, including the Kakas fund, were, as above set out, turned over to Anna Jaques. Worcester was,

[1] "5. . . . [T]his court reserves jurisdiction to consider upon petition in these proceedings, or in separate proceedings, applications for instructions (a) by the Attorney General or by said Anna Jaques Hospital with respect to the execution of this decree; or (b) by the Attorney General, the said Anna Jaques Hospital, or any person who is not as of the date of this decree a party to these proceedings and who claims an interest in the said Carl Edward Kakas trust fund and the said Jeannette I. Cummings trust fund, or either of said funds, with respect to the administration of, or rights or interests in, said funds or either of them."

[2] "3. . . . [S]ubject to the provisions of paragraph 5 of this decree, the Carl Edward Kakas fund is to be used for the purchase of medicines and surgical instruments and equipment in the Anna Jaques hospital . . . ."

and Anna Jaques was and is, a public, charitable, nonprofit hospital in Newburyport, and Anna Jaques is now the only hospital in that city.   Both hospitals were in the same section of the city about two blocks apart.   Kakas was formerly in the fur business in Boston but retired following a dispute with his brother.   "His brother and, after his death, his nephew carried on a fur business in Boston." Kakas had resided near Newburyport in Georgetown for many years prior to his removal to Maine.   His wife and a child predeceased him.

The case was reserved and reported by a single justice without decision upon the bill and answers and the statement of agreed facts.

It is not necessary to rule on the defendants' contention that, although the situs and the administration of this trust are in Massachusetts, the occasion for construing the will makes applicable the law of Maine.   See, for discussion of authorities tending to show that Massachusetts law is applicable upon the termination of a trust established and administered here, *Franklin Foundation* v. *Attorney Gen.* 340 Mass. 197, 203.   We have no doubt that the equitable principles which are applied in the decisions of both Massachusetts and Maine require the cy pres application of the Kakas fund which has been ordered by the prior decree of this court.

The relevant principles have recently been extensively considered in *Pierce* v. *How,* 153 Maine, 180, with restatement, at pages 191–192, of the requirement that a general charitable intention must have been manifested.   Accord, *Trustees of the Putnam Free Sch.* v. *Attorney Gen.* 320 Mass. 94, 98.   That requirement is satisfied in this case. There is no question that to provide for the purchase in a hospital of medicines, instruments and equipment is a charitable purpose.   Scott, Trusts (2d ed.) § 372.   The initial purpose to improve the facilities and service in a particular hospital did not exclude a general intent also initially present to make a charitable gift.   See *Trustees of the Putnam Free Sch.* v. *Attorney Gen.* 320 Mass. 94, 98;

*Milton* v. *Attorney Gen.* 314 Mass. 234, 238–239. That intent is now controlling. The "existence of the particular corporation was [not] of the essence of the gift" (Scott, Trusts [2d ed.] § 397.3, p. 2797) and the gift therefore does not fail. "The court can fairly infer an expectation on the part of the settlor that in course of time circumstances might so change that the particular purpose could no longer be carried out, and that in such a case the settlor would prefer a modification of his scheme rather than that the charitable trusts should fail and the property be distributed among his heirs who might be very numerous and only remotely related to him." Restatement: Trusts, § 399, comment f. *Trustees of the Putnam Free Sch.* v. *Attorney Gen.* 320 Mass. 94, 98–99, and cases cited. *Pierce* v. *How,* 153 Maine, 180, 192–198. Scott, Trusts (2d ed.) § 399.3, § 399.2. Fisch, The Cy Pres Doctrine in the United States, § 5.03. Early cases where the trust failed because at the time of the original gift the purpose could not be accomplished are not determinative of the present issue. See, for example, *Bowden* v. *Brown,* 200 Mass. 269. In the *Pierce* case, *supra,* at page 195, the court quoted Scott, Trusts, § 399.3, that "There is stronger reason . . . to apply the cy pres doctrine where the particular purpose of the testator fails at a subsequent time . . . ."

The absence of a gift over if the trust should fail is significant. *Trustees of the Putnam Free Sch.* v. *Attorney Gen.* 320 Mass. 94, 99. *Pierce* v. *How,* 153 Maine, 180, 193, and texts cited.

The merger in this case was not a statutory uniting of corporate entities (see Scott, Trusts [2d ed.] § 397.3), but the statement in the agreed facts of a "merger plan" implies provisions for carrying on aspects of Worcester. An inspection of the plan, which is specified in the agreed facts as the plan approved by the court in the decree after rescript, shows that there were such provisions in the plan.[1]

---

[1] The plan provided that a ward in Anna Jaques be named after Doctors Worcester and Hines, one or more trustees of Worcester be added to the Anna Jaques board, two doctors be admitted to the Anna Jaques staff, and the practice of homeopathy be allowed. It contemplated the dissolution of Worcester.

Thus it appears that in important aspects the specific intentions suggested by the gift to the particular hospital, as well as all of the general charitable intent, will be served by the cy pres application of the fund.

A decree is to enter as prayed for. No costs are to be awarded on this appeal.

*So ordered.*