ANNE MORTON & another[1] *vs.* J. BRIAN POTTS, trustee,
& others.[2]

No. 01-P-635.

Suffolk. November 21, 2002. - January 9, 2003.

Present: GREENBERG, DREBEN, & MASON, JJ.

*Trust,* Charitable trust, Beneficiary.

A Superior Court judge properly concluded that a trust was not void or inef-
   fective due to the settlor's failure to designate which charities she wanted
   the trust to benefit, where the trust was a charitable, rather than a private,
   trust and, hence, was not subject to any requirement that the beneficiaries
   be specified. [57-59]

CIVIL ACTION commenced in the Superior Court Department on
February 2, 2000.

The case was heard by *Allan van Gestel,* J., on motions for
summary judgment.

*James A. Brett* for the plaintiffs.

*Laura Steinberg* for Fiduciary Trust Company.

*Thomas D. Burns* for J. Brian Potts.

*Elaine Epstein* for Kathleen M. McCarthy.

MASON, J. The plaintiffs, Anne Morton and James E. Lindsay,
appeal from summary judgment entered in the Superior Court
dismissing their complaint against the defendants, J. Brian Potts,
Kathleen M. McCarthy, and Fiduciary Trust Company (Fiduciary
Trust), who are trustees of a charitable trust established in 1989
by the plaintiffs' sister, Margaret S. Lindsay (Lindsay). The
complaint sought a declaration that the trust was void and
unenforceable because Lindsay had failed prior to her death to

---

[1]James E. Lindsay.

[2]Kathleen M. McCarthy and Fiduciary Trust Company, trustees of the
Margaret Stewart Lindsay Foundation of 1989.

designate the charitable beneficiaries of the trust. We affirm the judgment.

*Background.* We recite the facts of record in the light most favorable to the plaintiffs, the parties against whom the summary judgment was entered. *Eck* v. *Kellem,* 51 Mass. App. Ct. 850, 851 (2001).

At the time of Lindsay's death, in October, 1999, Lindsay had no legal heirs other than the plaintiffs. In September, 1989, Lindsay established the trust (entitled "The Margaret Stewart Lindsay Foundation of 1989") and executed a will in which she left to the trust all of her assets, including the assets of three separate trusts established by her parents over which she held powers of appointment. The article relied on by the plaintiffs is Article two which provides:

> "The Foundation shall distribute its income, or shall set its income aside for one or more specific purposes, in the year received or within the year following . . . . The total amount thus distributed or set aside (hereinafter called the " 'distributable funds' "), shall be distributed, or set aside for future distributions, as follows:
>
>> "A. The highest priority of the Foundation shall be to provide for the funding of one or more charitable organizations, designated by the Donor, in whatever manner the Donor has expressed her preferences or may choose to express her preferences to the Trustees herein.
>>
>> "1. All decisions under this clause A by the Trustees shall be binding on all parties at interest."

Articles three, four and five of the trust, described more fully in the margin,[3] indicate Lindsay's intention that the trust qualify as a charitable trust under the Internal Revenue Code.

---

[3]Article three provides that the trustees may make distributions in addition to " 'qualifying distribution[s]' under section 4942 of the Internal Revenue Code," but only if they are not "taxable expenditures" within the meaning of section 4945 of the Code. Article four of the trust provides that the trust may not be terminated, merged or otherwise altered except "by compliance with Section 507(b)(1)(A) of the Code." Article five of the trust provides that it is "not organized for profit," that "no part of the net earnings or the assets of the Foundation shall inure to the benefit of any private individual," and that

The individual trustees were persons Lindsay had known for many years. Potts was an officer of Fiduciary Trust and, since 1984, had been administering several prior trusts in which Lindsay had a beneficial interest. McCarthy was Lindsay's attorney and had prepared the trust and will.

In 1989 when Lindsay executed the trust and accompanying will, she identified to Potts and McCarthy several charitable entities and causes in which she was interested, including, among others, the Martha's Vineyard Conservation Foundation, Greenpeace, children's charities, elder charities, and animal charities. She did not, however, fund the trust beyond an initial contribution of $10.00 or make any written designation of the charitable beneficiaries. Rather, she stated to Potts and McCarthy that her interests might change and, hence, she was pleased that she was retaining "flexibility" and "wasn't irrevocably committed to funding the charitable foundation."

About February, 1999, Lindsay told Potts and McCarthy that she was considering changing her estate plan, and she asked McCarthy to draft several alternative estate plans that would leave her assets to one or both of the children of the plaintiffs. McCarthy presented Lindsay with such documents on September 1, 1999, shortly before Lindsay left on a trip to Russia, but Lindsay refused to execute any of the documents. At that time, McCarthy informed Lindsay that, if she did not execute a new will, her estate would go to charity and she might want to settle the matter before she left on her trip.

Lindsay nevertheless left on her trip to Russia without executing any of the documents McCarthy had prepared. She died on October 17, 1999, with her estate plan unchanged. On December 15, 1999, a petition to probate Lindsay's 1989 will was allowed without objection.

On February 1, 2000, the plaintiffs commenced the present action. After both the plaintiffs and the defendants had filed motions for summary judgment, a judge of the Superior Court, on March 7, 2001, denied the plaintiffs' motion and allowed the defendants' motion. In an accompanying memorandum, the judge held that the trust was not void due to Lindsay's failure

---

"[n]o discretions given the Trustees . . . shall be read to contradict this Article."

to designate which charities she wanted the trust to benefit because the trust was a charitable, rather than a private, trust and, hence, was not subject to any requirement that the beneficiaries be specified.

*Discussion.* It is well-settled in Massachusetts that the beneficiaries of a charitable trust, as distinct from a private trust, need not be specified. See *Minot* v. *Attorney Gen.*, 189 Mass. 176, 179-180 (1905); *Wilcox* v. *Attorney Gen.*, 207 Mass. 198, 199 (1911). See generally A. Scott, Trusts for Charitable and Benevolent Purposes, 58 Harv. L. Rev. 548, 549 (1945). This is because the beneficial interest in a charitable trust is "not given to individual beneficiaries, but the property is devoted to the accomplishment of purposes that are beneficial . . . to the community." 4A Scott on Trusts § 364, at 108-109 (4th ed. 1989).

The plaintiffs do not dispute this general proposition but claim that, because of article two, the trust, as a precondition to its being effective, required that Lindsay designate the entities to be benefitted. The plaintiffs also rely on Lindsay's statement to Potts and McCarthy at the time the trust was created that she was pleased with the flexibility of the trust arrangement because her interests might change.

There is nothing in article two, however, which states that the trust will fail or be void if the donor fails to make any designations. Rather, the article states only that, in disbursing funds from the trust, the trustees shall give the "highest priority" to "the funding of one or more charitable organizations designated by the donor." The use of the words "highest priority" implies that the trustees are authorized to fund charities other than those designated by Lindsay, so long as they give a preference in their consideration to the charities, if any, that have been designated by Lindsay. Article two does not suggest that the trustees should have no power to act in the absence of any such designation.

Nor does it appear from Lindsay's contemporaneous statements that she ever understood or intended that the trust would be void if she failed to designate charitable beneficiaries. Had Lindsay intended such a result, she clearly could have stated so expressly in article two or elsewhere in the trust instrument.

That she did not do so strongly suggests that she did not intend the trust to fail in the absence of a specific designation. Moreover, Lindsay included no provision in the trust or in the will as to how her assets or those she had appointed should be distributed in the event of a failure of beneficiaries. The absence of any such default provision in Lindsay's will constitutes strong additional evidence that Lindsay did not intend that the trust should fail merely because she failed to designate any specific beneficiaries. See *Wesley United Methodist Church* v. *Harvard College*, 366 Mass. 247, 252 (1974), and cases cited.

We, therefore, reject the plaintiff's contention that the trust required, as a precondition to its being effective, that Lindsay designate beneficiaries. There is nothing in the trust indenture itself, or in the circumstances surrounding its execution, which supports this contention.

Although the plaintiffs further contended in their brief that the trust is a private, rather than a charitable trust, they appeared to concede at oral argument that the trust is indeed a charitable trust. In any event, any contention that the trust is a private one is utterly without merit. See note 3, *supra*, and accompanying text. See also *Minot* v. *Attorney Gen.*, *supra* at 179-180; *Rogers* v. *Attorney Gen.*, 347 Mass. 126, 132 (1964); *First Church in Somerville (Unitarian)* v. *Attorney Gen.*, 375 Mass. 332, 336 (1978).

In sum, the trust was not void or ineffective. See *Wilcox* v. *Attorney Gen.*, *supra* at 199. See also *Gershaw* v. *Gershfield*, 52 Mass. App. Ct. 81, 89 (2001) (court may not read into trust instrument a provision that is not there).

*Judgment affirmed.*